## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSEPH BARRETT and CRAIG CUNNINGHAM on behalf of themselves and others similarly situated, | : : : | |
| | : | Case No. |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FIDELITY SECURITY LIFE INSURANCE COMPANY and NFS INSURANCE AGENCY LLC d/b/a SENIORS UNITED INSURANCE | : : : : | |
| | : | |
| Defendants. | : | |
| _____/ | | |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.      Plaintiffs Joseph Barrett ("Mr. Barrett") and Craig Cunningham ("Mr. Cunningham") (collectively referred to as the "Plaintiffs") bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.      Fidelity Security Life Insurance Company ("Fidelity Security") hired NFS Insurance Agency LLC d/b/a Seniors United Insurance ("Seniors United") (collectively referred to as "Defendants") to originate new customers for their life insurance product. To do so, Seniors United sent pre-recorded messages, which were sent to cellular telephone numbers, which is prohibited by the TCPA.

3.      The Plaintiffs never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

4.      A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5.      Plaintiff Joseph Barrett is a resident of Middlesex County, in this District.

6.      Plaintiff Craig Cunningham is a resident of Tennessee.

7.      Defendant Fidelity Security Life Insurance Company is a Missouri corporation that has its principal office in Kansas City, Missouri and a registered agent of Richard F. Jones, 3130 Broadway, Kansas City, Missouri 64141. Fidelity Security conducts business in this District, including entering into life insurance contracts with recipients of Seniors United's telemarketing calls.

8.      Defendant NFS Insurance Agency LLC d/b/a Seniors United Insurance is a California limited liability company that has its principal office at 6080 Center Dr., Suite 300 in Los Angeles, CA. Seniors United conducts business in this District, including making telemarketing calls into this District for the purposes of soliciting customers, as it did with the Plaintiffs.

## Jurisdiction & Venue

9.      The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district as the telemarketing calls that gave rise to the Plaintiff Barrett's claims were made into this district, and the Plaintiff Barrett's cellular telephone, a substantial portion of the property at issue for these claims are located in this district. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(3) as both Defendants are subject to personal jurisdiction in this District.

**The Telephone Consumer Protection Act**

11.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[un]restricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

12.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

13.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

### Factual Allegations

15.     Fidelity Security is a company that offers insurance services, including life insurance contracts.

16.     To generate new clients for their life insurance contracts, Fidelity Security relies on telemarketing.

17.     In fact, Fidelity Security explicitly states on their website, "in marketing to consumers, FSL uses a variety of media including direct mail, space advertising and *telemarketing*." *See* http://www.fslins.com/Marketing_Distribution/Pages/Overview.asp (Last Visited July 18, 2018) (emphasis added).

18.     Fidelity Security's telemarketing is conducted by third parties like Seniors United.

19.     One of Fidelity Security's third-party telemarketing strategies involves making use of an automatic telephone dialing system ("ATDS") to solicit potential customers using a predictive dialer.

20.     Coupled with that technology, Fidelity Security's third-party telemarketers, like Seniors United, also employ the use of pre-recorded messages, which require the consumer to affirmatively respond to an automated message before they can speak with a live person.

21.     The equipment and recorded messages are used because it allows for thousands of automated calls to be placed at one time, but telemarketing representatives, who are often paid by the hour, only talk to individuals who pick up the telephone.

22.     Through this method, the Defendants shift the burden of wasted time to the consumer it calls with unsolicited messages.

Calls to Plaintiffs

23.     Mr. Barrett is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

24.     Mr. Barrett's cellular telephone number is (781) 315-XXXX.

25.     Mr. Barrett received at least two pre-recorded calls from Seniors United in February of 2018, including on February 13 and 16, 2018.

26.     These calls were made to Mr. Barrett's cellular telephone number.

27.     The calls were made to sell Fidelity Security's insurance products.

28.     On the February 13, 2018 call, Mr. Barrett spoke with a "Forbes Jones" at Seniors United following the pre-recorded message.

29.     Following the call, Mr. Barrett received an e-mail from guaranteedinsurance@seniorsunited.com, on February 13 at 6:12 PM (EST) which also identified "Forbes Jones".

30.     Mr. Cunningham is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

31.     Mr. Cunningham's cellular telephone number is (615) 348-XXXX.

32.     Mr. Cunningham received a pre-recorded call on that cellular telephone line on July 11, 2018.

33.     During that call, Mr. Cunningham spoke with "Sam" who claimed he was with Fidelity Security and "Lavarsha" from Seniors United.

34.     On the call, they attempted to sell Mr. Cunningham Fidelity Security life insurance products.

35.     Specifically, following the pre-recorded call, "Lavarsha" offered whole life insurance policies from Fidelity Security.

The Calls were made with an ATDS

36.     When the calls were answered, there was a lengthy pause and a click followed by silence before the recorded message was played.

37.     The dialing technology that causes a distinctive click and/or pause is also known as a predictive dialer, in which lines are dialed using an algorithm to "predict" when a call center operator will be available—which leads to the pause and "click" as the operator takes the call.

38.     Moreover, the use of a pre-recorded message is itself an indication that the calls were made with an ATDS, as it would be illogical to hand-dial calls just to play a pre-recorded message.

39.     Seniors United calls came from a variety of Caller ID numbers, including (334) 285-5541, (617) 275-5690, (718) 526-5562, none of which are consistent with their physical location, and some of which were local to the areas they were calling.

40.     The tactic of using a Caller ID that is different than your actual phone number is known as "spoofing".

41.     "Spoofing" a Caller ID is further indication that an ATDS was used, as a computer program paired with dialing software can change the Caller ID transmitted by a caller.

42.     These facts, as well as the scripted nature of the call and the fact that these calls were part of a nationwide telemarketing campaign demonstrate that the call was made using an ATDS as that term is defined in 47 U.S.C. § 227(a)(1).

Other Individuals Complain About Receiving Similar Calls

43.     Other individuals have complained about receiving automated calls from the same Caller ID numbers that the Plaintiffs received their calls on:

(334) 285-5541 is a Senior Scam.

https://www.nomorobo.com/lookup/334-285-5541 (identifying February 14, 2018 as the date the number was blocked by the NoMoRobo service) (last visited July 18, 2018).

44.     Plaintiffs and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

45.     Moreover, these calls injured Plaintiffs because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiffs and the class.

**Fidelity Security's Liability for the Telemarketing Calls**

46.     Fidelity Security is liable for the automated calls made by Seniors United.

47.     Fidelity Security is a "person," as defined by 47 U.S.C. § 153(39).

48.     The Federal Communication Commission ("FCC") is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

49.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

50.     In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

51.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Fidelity Security may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

52.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 FCC Rcd at 6586 (¶ 34).

53.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability

> by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

54.     Fidelity Security knowingly and actively accepted business that originated through the illegal telemarketing calls from Seniors United.

55.     In fact, Fidelity Security accepted the business from illegal calls from the defendants, even though it had previously received complaints alleging that the third parties working on its behalf were violating the TCPA.

56.     At a minimum, the Plaintiff Cunningham received at a pre-recorded call that resulted in an attempted sale of Fidelity Security products even though the Plaintiff Barrett had already sent them a communication about receiving a pre-recorded call.

57.     By hiring a company to make calls on its behalf, Fidelity Security "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

58.     Moreover, Fidelity Security maintained interim control over the actions of Seniors United.

59.     For example, Fidelity Security had absolute control over whether, and under what circumstances, it would accept a customer.

60.    Fidelity Security also had day-to-day control over Seniors United's actions, including the ability to prohibit it from using an ATDS or pre-recorded messages to contact potential customers of Fidelity Security.

61.    Fidelity Security also gave interim instructions to Seniors United by providing the volume of calling and contracts it would purchase.

62.    Seniors United's website also makes clear that their telemarketing conduct is undertaken on behalf of Fidelity Security:

**Who is the insurer?**

Seniors United Insurance has made arrangements with Fidelity Security Life Insurance Company to underwrite this Guaranteed Life Insurance at affordable rates. Fidelity Security Life Insurance Company has been providing flexible insurance products for over 40 years.

Fidelity Security Life Insurance Company has been rated A- (Excellent), based on an analysis of financial position and operating performance by A.M. Best Company – an independent analyst of the insurance industry.

See https://www.seniorsunited.com/resources/frequently-asked-questions/ (Last Visited July 18, 2018).

**Trust and Security**

Policies with Seniors United are underwritten and supported by Fidelity Security Life Insurance Company. Located in our nation's heartland, Fidelity Security Life embraces Midwestern values with a solid foundation of strength and responsiveness.

- Headquartered in Kansas City, MO
- Helping protect families since 1969
- Rated A- (Excellent), by A.M. Best Company – an independent analyst of the insurance industry

See https://www.seniorsunited.com/about-us/ (Last Visited July 18, 2018).

63.    Furthermore, Seniors United's website directs people inquiring about claims or service on the products they sold will be paid directly by Fidelity Security, "Once the claim is

approved, Fidelity Security Life Insurance Company will pay the benefit amount to the named

beneficiary within 2 business days." *See* https://www.seniorsunited.com/about-us/contact-us/

(Last Visited July 18, 2018).

64.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence

of these kinds of relationships . . . through discovery, if they are not independently privy to such

information." *Id.* at 6592-593 (¶ 46).  Moreover, evidence of circumstances pointing to apparent

authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden

of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer

was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

### Class Action Allegations

65.     As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring

this action on behalf of classes of all other persons or entities similarly situated.

66.     The classes of persons Plaintiffs propose to represent is tentatively defined as:

AUTOMATED CALL CLASS

All persons within the United States: (a) Defendants and/or a third party acting on
their behalf, made one or more non-emergency telephone calls; (b) to their
cellular telephone number; (c) using an automatic telephone dialing system or an
artificial or prerecorded voice; and (d) at any time in the period that begins four
years before the date of filing this Complaint to trial.

M.G.L. 93A CLASS

All persons within the Commonwealth of Massachusetts to whom: (a) Defendants
and/or a third party acting on their behalf, made one or more non-emergency
telephone calls; (b) to their cellular telephone number; (c) through the use of an
automatic telephone dialing system or an artificial or prerecorded voice; and (d) at
any time in the period that begins four years before the date of filing this
Complaint to trial.

67.     Excluded from the classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

68.     The classes as defined above are identifiable through phone records and phone number databases.

69.     The potential classes number at least in the thousands, since automated and pre-recorded telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

70.     Plaintiff Cunningham is a member of the automated call class.

71.     Plaintiff Barrett is a member of both classes.

72.     There are questions of law and fact common to Plaintiffs and to the proposed classes, including but not limited to the following:

a.      Whether Defendants violated the TCPA by using automated telemarketing to call cellular telephones;

b.      Whether Defendants placed calls using a pre-recorded message;

c.      Whether Defendants placed calls without obtaining the recipients' prior consent for the call;

d.      Whether Fidelity Security is liable for the telemarketing conduct of Seniors United;

e.      Whether the Plaintiffs and the classes members are entitled to statutory damages because of Defendants' actions.

73.     Plaintiffs' claims are typical of the claims of class members. Plaintiffs' claims, like the claims of the Classes arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

74.     Plaintiffs are an adequate representative of the classes because their interests do not conflict with the interests of the classes, they will fairly and adequately protect the interests of the classes, and they are represented by counsel skilled and experienced in classes actions, including TCPA class actions.

75.     Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

76.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

77.     The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

78.     Plaintiffs is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for the classes' membership described above.

**Legal Claims**

**Count One:**
**Violation of the TCPA's Automated Calling provisions**

13

79.     Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

80.     The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiffs and members of the Class using an ATDS and/or artificial or prerecorded voice.

81.     As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiffs and members of the Class presumptively are entitled to an award of $500 in damages for each call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

82.     Plaintiffs and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

83.     The Defendants' violations were negligent and/or knowing.

**Count Two:**
**Violation of M.G.L. 93A**

84.     Plaintiff Barrett incorporates the allegations from all previous paragraphs as if fully set forth herein.

85.     At all relevant times the Defendants were engaged in commerce for purposes of M.G.L., c. 93A.

86.     M.G.L., c. 93A, § 2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." M.G.L., c. 93A, § 9 permits any consumer injured by a violation of c. 93A, § 2 to bring a civil action, including a class action, for damages and injunctive relief.

87.     As alleged more fully herein, Defendants have violated c. 93A, § 2 by sending automated calls to Plaintiff Barrett and other Massachusetts putative class members. This conduct is unfair because it is harassing and annoying and invades the privacy of Plaintiff Barrett and the putative class members and because it causes them to incur costs for the calls.

88.     Defendants conduct also violates the TCPA and as such, constitutes unfair and deceptive conduct in violation of c. 93A, § 2.

89.     Pursuant to M.G.L., c. 93A, § 9, Plaintiffs on behalf of themselves and the MGL C. 93A Class, seeks an order:

a) Enjoining Defendants from continuing to engage in, use, or employ any of the unfair and/or deceptive business acts or practices set forth in detail above; and
b) Disgorging and restoring all monies that may have been acquired by Defendants as a result of such unfair and/or deceptive acts or practices.

90.     The Plaintiffs made a written demand for relief pursuant to Massachusetts General Laws chapter 93A section 9(3) and the Defendants have failed to make a timely and adequate response, thereby entitling the Plaintiffs and the putative class to judgment on this Count and for all damages authorized by statute.

91.     Based on the foregoing, Plaintiffs and the other members of the Massachusetts Subclass are entitled to all remedies available under c. 93A, § 9, including, but not limited to, actual or statutory damages, whichever is greater, multiple damages, attorneys' fees and costs.

## Relief Sought

For himself and all class members, Plaintiffs request the following relief:

A.      Certification of the proposed Classes;

B.      Appointment of Plaintiffs as representative of the Classes;

C.      Appointment of the undersigned counsel as counsel for the Classes;

D.      A declaration that Defendants and/or its affiliates, agents, and/or other related

entities' actions complained of herein violate the TCPA;

E.      An order enjoining Defendants and/or its affiliates, agents, and/or other related

entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F.      An award to Plaintiffs and the Classes of damages, as allowed by law;

G.      Leave to amend this Complaint to conform to the evidence presented at trial; and

H.      Orders granting such other and further relief as the Court deems necessary, just,

and proper.

**Plaintiffs request a jury trial as to all claims of the complaint so triable.**


PLAINTIFFS,
By their attorneys

*/s/ Anthony I. Paronich*
Edward A. Broderick
Anthony I. Paronich
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA 02110
(508) 221-1510
anthony@broderick-law.com

Alex M. Washkowitz
Jeremy Cohen
CW Law Group, P.C.

188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
mmccue@massattorneys.net